Good morning, Judge Brennan. Good morning, Judge Pryor. Most of all, good morning, all of our wonderful litigants. We are so happy to have you here today, as we always are. Look, without you, where would we be, right? Okay, so we will call the first case of the day. I hope everyone will indulge me because I am dealing with laryngitis, which means you're going to have to deal with it too. Okay, our first case of the day is Appeal Number 23-1812, Mary Rodgers-Rouzier v. American Queen Steamboat Operating Company. Good morning. Good morning. Good morning, and may it please the Court. My name is Leah Nichols, and I represent the appellant, Mary Rodgers-Rouzier, and the 127 opt-in plaintiffs. The District Court's order compelling Ms. Rodgers-Rouzier's claims to arbitration should be reversed for at least three reasons. First, the District Court erred in considering and granting American Queen's second Rule 12b-3 motion to dismiss because Rule 12g-2 flatly prohibits parties from getting more than one bite at the 12b-3 apple. Second, the District Court's decision should be reversed because it lacked the authority to compel arbitration under Indiana law for several independent reasons. Third, the District Court erred in concluding that American Queen's arbitration agreement is enforceable in its entirety. Because the agreement gives American Queen unfettered discretion to choose any arbitral procedures after the dispute arises, no enforceable agreement to arbitrate was formed in the first place. Ms. Nichols, I want to ask a question on the relationship between the first and the second issues that you've listed. If we were to disagree with you that the second motion is precluded by 12g-2, that would not affect your argument that you're still arguing that it would not be, the arbitration agreement would not be enforceable, correct? That's correct. Right. These are three independent grounds for reversal. And I'd like to follow up if I might. If we enforce the choice of law clause, doesn't that make the entire arbitration agreement an illusory promise? If you enforce the arbitration, make sure I understand the question. So if you enforce the choice of law, that is, decide that it must be governed by the Federal Arbitration Act, that it renders it illusory. The answer there is no, because American Queen has chosen a certain body of law that will cover the disputes that may arise. Now, it may be that American Queen has some employees who are subject to this for whom it would not be, you know, they're not Section 1 exempted employees, and they may, there may be a different result under that governing law. Let me explain my thinking at this point. One section tells you that you have to ignore the other section. In other words, Section 1 says that the employee agrees to arbitrate, right? Section 6 says the agreement is the FAA. But, or I should say that it's governed by the FAA. But since Rogers Rousier is a seaman, the FAA cannot apply. So how can the agreement be enforceable? Because she can agree to anything at that point, it seems to me. Well, Your Honor, I think there's a difference between being governed by the law and the result being that there's, that the court cannot compel arbitration versus there sort of, there being no law at all, if that makes sense. So if we look at what the, how the Supreme Court has treated Section 1 cases, it has not said in New Prime and in Saxon, it didn't say, well, you know, we're just ousting the entire procedures and framework of the FAA. We can't enforce this under Section 1 because this person is exempt or this contract is exempt. But that means that we don't have appellate jurisdiction under Section 16 because the entire FAA doesn't apply. The Supreme Court didn't hold that. Help me out here. The IUAA Section 1 in Indiana general contract principles make the choice of law clause in the arbitration agreement valid and enforceable. And that clause says that the agreement is governed by the FAA. So applying Indiana law to the contract logically leads the court back to the FAA, which does not allow compelling arbitration here. Are you at all aware of the U.S. Supreme Court case Fault Information Systems versus Board of Trustees of Leland Stanford Junior University? Absolutely, Your Honor. Okay. How does that come into all of this, do you think? So Vault, and there's another point I want to get back to, but with regard to Vault, Vault says, you know, we honor the procedures that the parties chose or the law and procedures that the parties chose in their agreement. So I think Vault actually helps us out here because in Vault. Indeed it does. Yes. In Vault says that we're going to honor what the parties have chosen in their agreement and here they've chosen federal law. And just because the result is that no arbitration under federal law doesn't mean that choice is invalid. And I want to draw this court's attention to the Indiana Court of Appeals decision in Albright. In that case, there was a dispute over which law would govern the question of arbitration. And the party's agreement said that Missouri law would apply. And one party was arguing, well, no, federal, we should look at federal statutes. And what the Indiana court said, it said, no, we are going to honor the party's choice to choose Missouri state law. And under Missouri state law, the answer was no arbitration. And the court, the Indiana court, didn't then go looking to see, well, let's see, let's look under federal law to see if arbitration could be compelled under federal law. It just held that Missouri law, which was the party's choice, citing Vault, we have to honor that and no arbitration under Missouri law. And that's the end of the inquiry. And so it should be here. American Queen has written into its contract that it wants these disputes to be governed by the federal arbitration agreement, sorry, the Federal Arbitration Act. Under the Federal Arbitration Act, the answer is no arbitration. End of the story. This court and Indiana courts would not go looking for other potential sources of law that would compel arbitration. Do you mind if we transition for a moment? Looking at our case law in Sherwood, in particular, explains that district courts may still enforce arbitration agreements under state law that fall outside of the FAA. And so I want to make sure that I appreciate the argument that's being presented this morning is that you're not disagreeing that the district court had the ability to interpret the contract, enforce the contract. However, the argument seems to be under equity, there was no remedy that the court could provide. That's right, Your Honor. And that's a slightly separate argument from the argument about the choice of law in the contract. That's right, I want you on the time, so we have to transition to a new topic. Absolutely. So, prior to 1925 when the Federal Arbitration Act was enacted, federal courts could not compel arbitration as just could not compel arbitration full stop of pre dispute arbitration agreements. They could not compel it or were they hostile to compelling it? They could not, in part because at the time there was a difference between law and equity and so on and so forth. So there were, at the time though, there were state arbitration codes that did provide for compelling arbitration. And when those contracts were in federal court, the federal court could not compel arbitration under those state arbitration codes. So one of the purposes of the FAA, in addition to dealing with the hostility to arbitration. Could they compel specific performance of the contract, compel the lawyers to go and do what you would agree to do? And if that would be arbitration, go and do that. So, at the time, it depends sort of on whether you were in a court of law or a court of equity. Let's stay in the court of equity. So if federal common law provided for it, the answer, yes. But it is a question of federal common law. So as we discussed in our briefs, the state can't determine what equitable remedies the federal law can provide. And so federal courts can provide. So federal courts can, via the Federal Common Law of Equity, federal courts can provide equitable relief, including specific performance under certain circumstances. But again, that's defined by federal law, not by state law. And there's a recent Ninth Circuit case that's on the point here, Sonner, which discusses this issue and says. I think our case infidelity also gets us there as well. Yes, right. And so here, though, what we have is we have a statute, a federal statute, that says specifically that the federal courts can compel arbitration under these circumstances. It can offer this equitable remedy under these circumstances. And I think it would be error to say that where we have a specific statute saying when equitable relief is available, that the federal courts also have the power to grant equitable relief in other circumstances as a matter of federal law. And so here we have a statute that defines the scope of when a federal court can grant the equitable relief of compelling arbitration. And the federal courts are stuck with that. Now, I think as a practical matter, again, we're not saying that the federal courts don't have the authority to, or don't have the power to interpret a statute under state law, or, sorry, interpret a contract under state law. They do that all the time. Of course, they can do that. There may be other remedies available, such as declaratory relief. But the specific remedy of compelling arbitration is controlled by the Federal Arbitration Act and a couple of other statutes, federal statutes that deal with it. So what do we do now that we're outside of the FAA? So now that we're outside of the FAA, I think as a practical matter, the procedure that could go forward is, there's nothing to say that American Queen couldn't go to state court and try to enforce that. That's an entirely separate question. The question is whether they can do it in federal court. So as a practical matter, it might make sense, for example, to stay the federal court proceedings while they go to state court to decide those issues. And maybe the state court could compel arbitration if it's appropriate. And so there are other remedies available. But the specific remedy of compelling arbitration of a pre-dispute arbitration agreement is governed solely by the FAA and a couple of other statutes that address it when we're in federal court. The Supreme Court has said, though, hasn't it, that in certain instances, when there is a stay put in place, the federal court is permitted at that point to compel arbitration. Procedurally, we're in a different posture because there was a dismissal of the lawsuit. Yes. So there is a dismissal of the lawsuit here. And that's where we're at. And I'll say also to be very clear, this court doesn't have to reach that question if it honors the choice of law that American Queen put in its contract. And I'll just note very quickly that the severability agreement or the severability provision doesn't apply. The severability provision says if a provision is unenforceable or invalid, there's nothing unenforceable or invalid about choosing the Federal Arbitration Act to govern your arbitration agreement. It's just that the result of applying the Federal Arbitration Act is no arbitration. And American Queen can't then use its severability clause to say, well, I didn't like the outcome of the law that we chose, so we're going to ask the court to put in some other law. Ms. Nichols, on your second issue, this is a short arbitration agreement, three pages, six provisions. There's challenges to the second, fourth, and sixth provision, and there's amici weighing in supporting you on the fourth provision. At some point, the severability takes away the core of the arbitration agreement. That's right. Is it your position that winning on any one of those three provisions works, or is there a certain amount of the arbitration agreement that has to be excised to no longer make it valid or enforceable? Sure. So quickly, with regard to the Federal Arbitration Act, I think if this court honors that, then there's no arbitration full stop. With regard to the—that's Section 6. With regard to Section 2, that gives American Queen unfettered discretion to decide the terms of arbitration. That alone, I think, tanks the entire arbitration agreement because it doesn't— because the employees have no way of knowing what arbitration is going to look like. We don't know what American Queen could choose. It gives them complete discretion to do that. So we've argued in our briefing that, as a number of other state courts have recognized, that there's—that once you give all of that unfettered discretion to one party, that that means that there's no meaningful agreement to arbitrate. I think the severability argument with regard to the statute of limitations, I think that in combination with the unfettered discretion provision, even if the unfettered discretion provision doesn't mean that the entire agreement is enforceable, in combination with other enforceable agreements, it means that there's just so much enforceability that the severability provisions take away too much of the contract. Are you familiar with the Precision Homes of Indiana case from Indiana Court of Appeals that has answered this precise question? I did find that case in preparing for argument, Your Honor. That case, I think, is distinguishable because the parties there were represented by counsel. And so one of the factors that Indiana courts look to when deciding whether something is unconscionable is the extent to which there was uneven bargaining power between the parties. And in Precision Homes, they said there's no unequal bargaining power. They were represented by counsel. And so that case is distinguishable. More importantly, I think the part of the line of that analysis that I think we need to tease out a little bit is when the Court of Appeals made the decision that even though one side has the power to select the arbitrator, that alone does not make it unconscionable. And so looking at the facts, I know you indicated that it's distinguishable. Can we talk through kind of the why there? Sure. So Indiana unconscionability law provides that a contract is unconscionable if a great disparity in bargaining power and I see my time has expired and I'll complete the answer. A contract is unconscionable if a great disparity in bargaining power exists between the parties and that the contract is one that no sensible person would accept. And here, in Precision Homes, the court found that there was no disparity in bargaining power because both parties were represented by counsel negotiating the contract. Thank you. Thank you. Okay. Well, Ms. Nichols, I will give you the... Oh, you disappeared. You disappeared. I will give you... I don't blame you for running away. I will give you the two minutes because you were sort of peppered with questions. Okay. Thank you very much, Your Honor. Thank you. All right. Good morning. Good morning. May it please the court, Dean Romheld on behalf of the Acting Secretary of Labor. We are participating as amicus on the case, in this case, to urge this court to reverse two errors by the district court relating to the Fair Labor Standards Act. The first error was finding that the shortened statute of limitations period here was enforceable as the FLSA claims. And the second error was finding that contrary to the plain language of Section 16B of the FLSA, that the employees who had filed the required opt-in notices were not party plaintiffs to the action. Mr. Romheld, on the second issue, the law around the country seems to, although coming to a similar result, have different rationales. You've got the Hollins case from our court. Recently, the First Circuit Waters case. There's a Fifth Circuit, Swales. Some say two steps. Some say one step. Some say the text. What's the solicitor's position? Well, I think with respect to whether there should be a one-step or two-step process, you know, that's a separate issue here. The district courts in the Seventh Circuit generally apply a two-step process. And this court has said, although that's not required, it's also rejected challenges to that two-step process, for example, in Ray New Albertson's case. I'm not sure that the process here particularly matters. I mean, our focus is on the circuit courts across the country, including Waters v. Day-Zimmerman, that have said that conditional certification itself is not relevant to determining whether an employee who opts in is a party plaintiff to the case. Section 16B provides that employees may bring, file collective action complaints, and that other employees may opt in by filing that written consent with the court. And under the text of the statute, that makes them party plaintiffs to the case. It doesn't give them any special position. It just makes them on equal terms with the plaintiff who filed the complaint and made the underlying allegations that the FLSA was violated. And in addition to the First Circuit in Waters v. Day-Zimmerman, the Ninth Circuit in Campbell v. City of Los Angeles, the Third Circuit in the Fisher v. Federal Express case, and the Eleventh Circuit in Micklesvie Country Club have all arrived at that same conclusion and have rejected any connection between conditional certification and the opt-ins party plaintiff status. How would we distinguish, though, those holdings from Hollins? Yeah, I mean, nobody here is asking this court to overrule Hollins, or we don't object to the conclusion in Hollins. I mean, in Hollins, the court was addressing whether the fact that employees had opted in was an obstacle to a final appealable judgment in that case. And there was a final appealable judgment. There's no doubt about that, whether the employees were party plaintiffs or not. I mean, in our view, they were party plaintiffs, so they had filed their written consents. I mean, this court in that case analogized to Rule 23, and we think that that's not a very helpful analogy, as the Supreme Court has noted in Genesis Healthcare. They're fundamentally different procedures under a Rule 23 opt-out class action, sorry, an FLSA opt-in collective action. In addition, the courts relying on the fact in Hollins that there had been no conditional certification, I mean, I respectfully, I think, misapprehended what the Supreme Court said in Genesis Healthcare. In that case, it said that the sole consequence of conditional certification was a facilitation notice to the parties. The Supreme Court said it didn't create any class with any independent legal status. And since Hollins, the four circuits that I mentioned earlier have all looked at Genesis Healthcare and reached the conclusion that conditional certification is not connected to whether an opt-in is a party plaintiff or not. They are, in fact, party plaintiffs, whether conditional certification has happened or not. So I think this case, again, in Hollins, it sort of wasn't as squarely addressed. It was raised by the plaintiff after she had filed her own appeal. This court was looking at it in the context of, again, whether the opt-in plaintiffs were an obstacle to a final appeal of a judgment. And I think having the benefit of the four sister circuits who followed reviewing Genesis Healthcare and maybe the benefit of the issue being really fully briefed and a central issue in this case compared to the other case gives this court an opportunity to reevaluate those statements. Again, the underlying decision in Hollins was correct, and we're not asking that the court overrule that or anything like that. Briefly on the severability issue that was raised earlier, I would just like to point out a couple other things that maybe the court could take into consideration when assuming that it were to find the reduced limitations period unenforceable. There are a couple of policy considerations that we would ask the court to take into consideration. A short limitations period could have the impact on employees and prevent them from going to an attorney or coming to the Department of Labor with claims if they read in their agreement that maybe it's limited to six months and that provision's enforceable. And severance doesn't cure that effect that the agreement has on employees. And we do see these provisions in many, many arbitration agreements, also occasionally in employment agreements, too. And they are common, and severance hasn't dissuaded employers from continuing to keep those provisions in agreements. And we would just ask that the court continue to take those policy considerations into account if it finds the shortened limitations period enforceable and then considers whether it's severed. All right. Further questions? Thank you. Thank you. Thank you very much. Good morning. Good morning. I'm Dennis Merle, and I represent the American Queen. If it may please the court, beginning with the policy considerations and the opt-ins that the Department of Labor Counsel just addressed, when I read their moving papers, their brief on the issue, they seemed most concerned about the status of an opt-in as a party because of the potential impact on tolling of the statute of limitations. And they had concerns that Hollins did not specifically provide in a collective class that those statutes of limitations are tolled. And we agree, and we read Hollins to provide that. And, in fact, in the case below, there was a tolling agreement that specifically applied to the opt-ins until these issues were resolved. So I understand that the issue about whether or not the opt-ins are a party is driven in part by that concern, but we don't see that as a concern under the language in Hollins and believe if there's any issue in that, the court should specify that those opt-ins are tolled prior to the Step 1 certification process. So if that helps the court in that regard, that's our view on that. On the issue of severability, which the court was addressing, I think the appellants have grossly taken the arbitration provision underlying this out of context. The arbitration agreement provides for alternative dispute resolution groups. It provides the employee with the choice of using AAA, JAMS, or another provider. And the reason it does that, there's case law in this circuit and others that say whether you've had a situation where the contract designated an arbitration service and that arbitration service then went out of business. And then there was questions about whether that made the arbitrations agreement vague and unenforceable somehow. So the way that agreement's written is to remedy that issue. And I did look for this throughout the agreement. Where is that right given to the plaintiff to select the arbitrator? It is in where it says it may be brought under the three. And if I can find that really quickly. Because I have selected by the company. Yeah. Well, that's the third one. If you read that same provision, and I believe it's section six. It is. Right. It says specifically, it identifies three, and it's ORs. The use of the word OR says you can use any of the three. Both parties have told this court that the majority of the opt-ins have, in fact, filed arbitrations after the district court's ruling. And they filed them with the AAA, which is where these arbitrations are pending now. So they utilized the agreement and chose the AAA as their tribunal. And that is where we're pending while we're waiting for this court's ruling. So we don't have anything in the arbitration agreement that gives that specific right? I believe the agreement does when it says, you know, be governed by AAA, JAMS, or one selected. The use of the word OR, in our view, gave the employee or the employer the right to use any of those three. And that is, in fact, what happened. Why don't you move to that fourth provision and your thoughts on, because there's amicus weighing in on shortening the statute of limitations, et cetera. Yes. And so, from our perspective, one, we do not believe that the district court's comments on the shortening of the statute of limitations is a binding opinion on anybody. That, in our view, was herdicta in expressing whether or not the agreement was enforceable. We view that as an issue that the parties have agreed to submit to an arbitrator is substantive law. And the arbitrator should have the right to look at the agreement and decide if that agreement conflicts with the FLSA or not. And, as this court is aware, there are plenty of procedural mechanisms and protections in place if the arbitrator were to go way outside the bounds of what they're authorized to do under the law. So, first, we think that issue should go. I'm sorry. I want to make sure I appreciate the argument is that the validity of the arbitration agreement does not encompass the statute of limitations. That's right. I think that's a substantive issue to be decided on the agreement between the parties by the arbitrator. So, as we believe, and I believe you asked Judge Vernon the question, how many times do you accept something out before you say we don't really have an agreement? The argument, as we said, that the three options are options. That doesn't need to be severed. The only issue in here that rises to that level is potentially that six-month limitation. And, you know, we're not here to debate the substance of FLSA law because this was on a decision on whether or not to compel arbitration. We do believe that should go to the arbitrator, though, and then be subject to review. I'd like I want to go into my favorite area here, the choice of law clause. Yes. Okay. How how is the choice of law clause invalid or unenforceable and thus severable? We can enforce the choice of law clause by following the FAA, even if following the FAA then requires that we deny your request to compel arbitration. Shouldn't we hold you to your choice of law as a matter of contract, regardless of the result that that choice leads to? No, Your Honor. Respectively, no, I don't believe you should because this specific issue was addressed by the Third Circuit in the Harper versus Amazon case that has been cited to the court by both sides. And in that court, they had this exact issue. The Federal Arbitration Act did not apply. The contractor decided the FAA, right, and the court is struck with it. And what the court said in that is, well, some law must apply. We have a written what is undisputed in this case is that there is a written arbitration agreement with the plaintiff, with these members of the potential opt-ins that governs this claim. Right. And if the Federal Arbitration Act does not apply, what law does? And that's what the Third Circuit has laid out in that Harper versus Amazon case is exactly what should happen. And what it should do and what they did in that case is they said, all right, you know, this is from the state. This is where it rose. This is the law that applies, which is exactly what the judge, district court judge, did here. What limits are there to modifying the agreement to render it enforceable? Could a court remove the sentence expressly excluding certain claims, force a plaintiff to arbitrate a worker's compensation claim? Well, no, workers could not. And I believe, if I remember right, that's specifically carved out. And why is the choice of law clause any different? Because if you take out, we all agree, the FAA does not apply to a seaman. All right. If you take out that provision, then what law governs? We have contracts all the time that do not have a choice of law provision in them. And we apply our choice of law provisions to decide what law governs. That's what the court did here is she applied Indiana law because we had an Indiana entity entering into a contract. And the parties, as she noted in her opinion, didn't dispute that if state law applied, it would be Indiana law. And so we come back to. Well, go ahead. I'm sorry. I would say Judge Reagan, I don't know if he pronounces it, Reagan or Regan, in the Atwood case came to the same conclusion in a similar situation that if the FAA doesn't apply and that's what's recited, that you use state law. The district court in the Reno versus Western CAB case recited, same conclusion. Easter Day versus the US PAC, New Jersey case, same conclusion. So other courts have looked at this exact issue. These are all district court cases, correct? They are. But they've all gone through this exact same analysis, as did the judge in the Saxon versus Southwest case, right? And they've all come to the same conclusion and followed this same procedure. Here's what I'm worried about. Rather than severing the choice of law clause, are you really asking for us to reform the contract based on a mutual mistake of law? And does Indiana law even allow that remedy? That is not how I conceptualize it, Judge Roebner. I do not view it as a mutual mistake. They chose a law. That law does not apply. And as the Third Circuit said... Wait, wait, wait. Who is they? Who is they? I'm sorry. Could you ask that question again? Who is they? You said they chose that law. Oh, I'm sorry. The district court determined that Federal Arbitration Act didn't apply. So she said, and followed that same analysis, we have a contract. Some law must apply to it. And the only question really at that point is which law? And we had briefed below was, you know, there's an argument maybe it was Tennessee law because that could have been the form selected under the agreement. But as we, to the district court, there was no material difference between Tennessee or Indiana law on this issue. She applied Indiana law sitting in Indiana with an Indiana entity and came to the conclusion she did. And we think she followed the right process in doing that, just like the Third Circuit laid out. Mr. Murrell, what is your response on the choice of law question that the IUAA only allows Indiana state courts to provide the remedy of compelling arbitration? Novel was my view. They acknowledge that they have no law for the argument that they're making that federal courts do not have the ability to enforce state court law in this situation. They were asking this court to create new law. This court has looked at that issue and has followed state law in other cases, as we cited in our brief and as this court is aware. I think that argument is at best novel. And what we're setting up is a situation, if that were the law. We're setting up a situation where a plaintiff can truly forum shop. If they want the arbitration provision, they can go to state court. If they don't want it, they go to federal court and say, federal court, you can't compel arbitration, even though I have a state law agreement that says it. All right. That's exactly what the court, the Supreme Court, in the Bernhardt case and Justice Douglas said that both York in that case said what you can't have under Erie. And the whole purpose of Erie is to not have substantively different decisions based upon whether you walk into a state courthouse on one block or a federal courthouse on another block. And that's what their argument would allow. It would permit exactly that. And that is exactly what the U.S. Supreme Court in those cases has said we should not do. And that's what it would create. I hope that answered your question. Thank you. Yes. And I think you're going to have to help me here. Seems to me what you are asking is at some point for the court to just rewrite the contract from scratch to save American Queen from its own mistake. And that's less a question of severability and more to me like a complete reformation of the contract to better represent what the parties may have intended. But Indiana law prohibits reformation based on mistakes of law. Of course, that's the Cutter case. So on balance, wouldn't it be wouldn't the best interpretation be to leave the parties with the choice of law that they agreed on? Even if the questionable result is that the contract is entirely unenforceable, maybe to the point of not being a contract at all. Do you see my problem? I understand your position and the issue you're presenting, Judge. It's not my position. It's my problem. I'm listening carefully to everyone and everything. Yes. But my concern with the position you just took, first of all, we believe the court should follow the lead of the Third Circuit on this precise issue. And we've laid that out. But to answer your question, no, you're looking at a contract and you're saying, all right, the Federal Arbitration Act does not apply. But these parties still intended to have a contract. And so the only question before the court, then, is what law applies. We're not asking you to rewrite the contract. We're saying just take out that one section, and we do have a severability provision in it, even though, as Judge Brennan pointed out, it's a rather short contract. It does have a severability provision. Take out the reference to FAA, sever just that section, and then interpret it as if there was no reference to it. That's what we believe the right course of action is. And as you said, that's what the Third Circuit's done. That's what district courts in this circuit have done and other courts around the country. And we believe that is a proper analysis. Is there a practical difference between, for looking at the remedy, practical difference between a stay and compelling arbitration, which was done in this case? Is there a practical impact? The only potential impact would be on those statute of limitation claims, right? If you stay it, you keep it. And it could also be which court you go back to for review. I believe there may be some question if this is dismissed and you come back up, does a federal court have jurisdiction under the—we don't have the FAA, right? So what is the jurisdiction of the federal court to hear the issue of whether or not the arbitrators did properly under Indiana law? That may—practical impact, it may result in going back to state court where if she were to have stayed it, she would retain jurisdiction and have that right to review. I believe that's the practical implication. And I think as the court is aware, we requested in the alternative of our—under Rule 12b3, we also made the motion to stay and compel arbitration. And we would have been fine with that result. But the court looked at Indiana law and under the Indiana statute, the law thought she was required to dismiss it since there were no other issues still pending in front of her court. But I believe she could have, at least under her inherent authority in Rule 16, have stayed it and kept it if she had chosen to. And I think that was a discretionary call for her. I think—does that answer your question? I think that is the practical impact of it. It does. And one of the questions that were raised kind of when we first started this conversation was looking at the statute of limitations, that that goes to the whole of the contract. Let's say if we disagreed with that representation and that this was a part of the arbitration agreement and the district court was permitted to take a look at that, why wouldn't a shortened statute of limitations act as a waiver of FLSA rights? Again, I believe that's a substantive issue. Now we're in the question of the substantive law as opposed to whether there should be an arbitration or not. And to my view, that is a question of the arbitrator. We haven't briefed that, really, as to what the impact of that agreement is or isn't under FLSA in front of a tribunal on the subject matter yet. I think it's an interesting question. Now I understand the plaintiff's concerns about the shortening of the statute of limitations, and they cite some persuasive arguments, right, that you can't do that. But again, I think those are arguments they should be presenting to the arbitrators in these cases as opposed to this court because I do think that's an issue that goes to that arbitrator. But if we agree with you that the arbitrator has to decide whether the waiver of the statute of limitations conflicts with the FLSA, could a court later refuse to confirm an award enforcing the waiver because that award violates the FLSA? I believe there are review mechanisms in place, and I believe that could be a ground. The question then is, did the arbitrator act outside their authority in doing that? And I think that would be a basis to contest it. And then a reviewing court would have to make those determinations. That's what we do when we refer things to arbitration. You know, the FLSA, of course, would not generally permit Rogers Rousier to enter into a contract that would settle a lawsuit for two years' wages by accepting only six months' wages. So why should we treat a pre-dispute waiver of the statute of limitations in an arbitration agreement any more favorably than a post-dispute settlement agreement? And again, I understand the issue, Judge Rubner, and I understand the position. But again, now we're talking about the substance of the issue below, not the procedure of it. Again, I believe that's properly for the arbitrators to determine. I think that plaintiff's counsel will make very persuasive arguments to them. I believe if, Judge, if you were their counsel, you'd make very persuasive arguments to them, I believe. And that will be a decision then for the arbitrator to make. That's the nicest compliment I've had in 40 years. Thank you. I try my best. I see I have a minute left. I think we've covered the issues you want to talk about. I just don't want to read from our briefs or anything. So if there are no other questions, I'm complete. Thank you so very much. All right. We're going to have Miss Nicholas come back. All right. Thank you, Your Honors. Starting just a couple of points, starting with sort of the issue that Mr. Murrell ended on with regard to whether the question of the statute of limitations is for the arbitrator or for the court. Both Indiana and federal law are very clear that when you are challenging a specific arbitration agreement, questions that go to that challenge are for the court to decide. That's in Brumley. That's in Renta Center. So here, one of our arguments for why this arbitration agreement, and this is a standalone arbitration agreement, this limited statute of limitations exists only in the context of arbitration. It talks about arbitration claims. It doesn't extend beyond that. That is one of the reasons why we are challenging or one of the bases for challenging this arbitration agreement. Because of that, that is for this court to decide and not for the arbitrator. Judge Rovner's question about the review, I think, really emphasizes this. Of course, there is very limited review of arbitral decisions. Sort of saying a legal error is not a basis for overturning an arbitrator's decision. So it's unclear if, in fact, that would be a question that the parties could review after the arbitration. I also want to note Mr. Murrell mentioned Harper a number of times. Of course, there is a circuit split on that agreement. And whether or not parties can, whether or not that agreement, that's the Amazon Flex agreement, is enforceable under Washington law in the absence or in the finding that Section 1 applies. The First Circuit's on one side. We have Rittman and the Ninth Circuit on the other side. And so the law is not crystal clear. There is at least a circuit split on that question. And for the reasons that we've already said, we would urge this court to hold that Indiana law doesn't gap fill in the circumstance. And then the last thing I'll say very quickly, if I might wrap up, is to say that Indiana law, if I could just finish one point. Of course. Thank you. Indiana law evaluates an agreement at the time it is made. So subsequent events such as arbitrations and things like that don't matter to the question. Indiana law is crystal clear that we analyze what the terms of the agreement are and whether they are enforceable in the text at the time that they are made. And we don't take into account subsequent events. No further questions. Thank you very much. And I certainly, we all certainly want to thank Ms. Nichols, Mr. Romehill, Mr. Murrell. And the case will be taken under advisement.